IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ZEESHAN SHAIKH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-cv-354 |
| | ) | Collier/Shirley |
| v. | ) | Jury Demand |
| | ) | |
| LINCOLN MEMORIAL UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**LINCOLN MEMORIAL UNIVERSITY'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Comes the Defendant, Lincoln Memorial University ("LMU"), by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court's December 8, 2011 Scheduling Order, and submits this Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.

1. LMU's DeBusk College of Osteopathic Medicine ("DCOM") opened its doors on LMU's campus in Harrogate, Tennessee on August 1, 2007. (Leo Dec. ¶ 2.)

2. DCOM currently offers two professional degree programs: Doctor of Osteopathic Medicine and Master of Science in Physician Assistant Studies. (Leo Dec. ¶ 3.)

3. Since its inception, DCOM has offered a four-year, full-time academic and clinical curriculum leading to a Doctor of Osteopathic Medicine degree. (Leo Dec. ¶ 4.)

4. DCOM's Doctor Of Osteopathic Medicine curriculum includes two years of pre-clinical science classes and two years of clinical rotations. (Leo Dec. ¶ 5.)

5. During the 2010-2011 calendar year, all DCOM students were assigned grades of A, B, C and F, depending upon the quality of their academic performance in a specific class. (Stowers Dep. 65; Ex. 2, pp. 47-48.)

6. During the 2010-2011 calendar year, grades below 70% caused DCOM students to receive an F, which was a failing grade. (Stowers Dep. 65; Ex. 2, pp. 47-48.)

7. DCOM's inaugural class graduated on May 14, 2011. (Leo Dec. ¶ 6.)

8. DCOM's mission is and has always been to prepare outstanding osteopathic physicians to serve the health and wellness needs of people living in the Southern Appalachian region of the country and beyond. (Leo Dec. ¶ 7.)

9. During the relevant period, DCOM posted all lecture notes and power points prepared by the instructors on a DCOM electronic Blackboard approximately one week before the class to which the lecture notes and power points related. (Leo Dec. ¶ 8.)

10. During the relevant period, DCOM posted a videotape of each lecture on a DCOM media site on or about the night after the lecture was conducted. (Leo Dec. ¶ 9.)

11. During the relevant period, DCOM students, including Shaikh, had access to the materials posted on DCOM's electronic Blackboard and the lecture videotapes on DCOM's media site. (Leo Dec. ¶ 10.)

12. During the relevant period, DCOM students, including Shaikh, could review the materials on DCOM's electronic Blackboard and the lecture videotapes on DCOM's media site as many times as necessary. (Leo Dec. ¶ 11.)

13. Prior to his admission to DCOM, Shaikh had been diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD") and Dyslexia. (Shaikh Dep. 158-66.)

14. Shaikh was prescribed Adderall (20 milligrams) to treat his ADHD. (Shaikh Dep. 49-50, 160-61.)

15. Shaikh took Adderall during the period he was a student at DCOM, and it helped with his symptoms by making him more focused. (Shaikh Dep. 161-62.)

16. In the personal statement that Shaikh submitted to DCOM, he disclosed the fact he had reading difficulties. (Shaikh Dep. 45-46.)

17. During Shaikh's interview at DCOM before his admission, Shaikh discussed the fact that he had reading difficulties. (Shaikh Dep. 45-46.)

18. Shaikh learned that he had been admitted as a student at DCOM less than one week after his interview. (Shaikh Dep. 45-46.)

19. On April 27, 2009, Shaikh sent an email to Jonathan Leo, Ph.D. ("Leo"), DCOM's Associate Dean of Students, inquiring about accommodations during his time as a medical student at DCOM. (Shaikh Dep. 94-95; Ex. 1.)

20. On May 15, 2009, in response to Shaikh's request for accommodations, Leo stated:

> You will get time and a half on written exams and a quiet room. I'm on the road right now. But I will be back in the office tomorrow if you want to talk about it.

(Shaikh Dep. Ex. 2.)

21. Shaikh responded to Leo's email by stating:

> That sounds fine. I have received 50% more time throughout undergrad and that worked fine.

(Shaikh Dep. 61; Ex. 2.)

22. Shaikh did not request more than 50 percent additional time for examinations prior to the start of classes at DCOM in the Fall 2009. (Shaikh Dep. 61-62.)

23. Shaikh was allowed to sit at the front of his classes at DCOM as was recommended to him. (Shaikh Dep. 163-64; Ex. 25.)

24. Shaikh sat in the front of the classrooms except when he was late for class. (Shaikh Dep. 163-64.)

25. During the Fall 2009 semester, Shaikh took the following classes: Medical Gross Anatomy, Molecular Fundamentals of Medicine I ("MFM-I"), Foundations of Modern Health Care, Osteopathic Principals and Practice I ("OPP-I"), and Essentials of Patient Care I ("EPC-I"), all of which were part of DCOM's required pre-clinical science curriculum. (Leo Dec. ¶ 12.)

26. In August 2009, the Anatomy Department assigned a tutor to Shaikh. (Shaikh Dep. 168.)

27. In October 2009, Shaikh stopped studying Medical Gross Anatomy to focus on MFM-I to enhance Shaikh's ability to pass MFM-I. (Shaikh Dep. 87; Ex. 3.)

28. On December 16, 2009, Shaikh did not take his MFM-I examination, as he was scheduled to do. (Leo Dec. ¶ 13; Shaikh Dep. 104; Ex. 4.)

29. On December 16, 2009, after deciding not to take the MFM-I examination, Shaikh sent an email to Leo which provided:

> I did not take the exam today. I've been having some personal issues and unfortunately, it has interfered with my studies. I am trying to put these issues behind and trying to move on. I realize this is not acceptable and do feel terrible about the whole situation. I am not sure what happens now.

(Shaikh Dep. 104, Ex. 4.)

30. On December 17, 2009, at Leo's recommendation, Shaikh sent a letter to Dean Ray E. Stowers ("Dean Stowers"), asking for permission to take a leave of absence from DCOM and return to the school in the Fall 2010. (Shaikh Dep. 106, Ex. 5.)

31. On December 17, 2009, Dean Stowers sent a letter to Shaikh, advising him that his leave of absence request had been granted. (Shaikh Dep. 107; Ex. 6.)

32. Dean Stowers' letter further advised Shaikh that he could submit a written request on or before April 1, 2010 to return to DCOM in the Fall 2010 at which time he would be required to "retake all the courses of that semester." (Shaikh Dep. 107; Ex. 6.)

33. Shaikh believed that Dean Stowers and Leo understood his situation and were acting in his best interest in connection with his request for a leave of absence. (Shaikh Dep. 105, 107.)

34. Had Stowers not granted Shaikh's request for a leave of absence, Shaikh would have been at risk for being dismissed from school for failing two classes in the Fall semester of 2009. (Leo Dec. ¶ 14.)

35. At the point he withdrew from DCOM in December 2009, DCOM had provided Shaikh all the accommodations he requested and to which he agreed before starting at DCOM. (Shaikh Dep. 108-109.)

36. Shaikh sent a letter to Leo on March 19, 2010, requesting permission to return to DCOM as a full-time student in the Fall 2010. (Shaikh 109; Ex. 8.)

37. Shaikh's March 19, 2010 letter did not request DCOM to provide him with any accommodations other than those provided to him during the Fall 2009 semester. (Shaikh Dep. 109.)

38. Shaikh returned to DCOM as a student in the Fall 2010 semester, and took classes under the accommodations DCOM provided to him and to which he agreed the previous year. (Leo Dec. ¶ 15.)

39. During the Fall 2010 semester, Shaikh earned a grade of 69.58% in Medical Gross Anatomy, which was rounded up to 70%, allowing him to pass the class. (Leo Dec. ¶ 16; Shaikh Dep. Ex. 24.)

40. At no time during the Fall 2010 semester did Shaikh request DCOM to provide him with any different or additional accommodations. (Shaikh Dep. 110.)

41. Nor did Shaikh request any different or additional accommodations prior to the start of the Spring 2011 semester. (Shaikh Dep. 62.)

42. During the Spring 2011 semester, Shaikh failed Molecular Fundamentals of Medicine II ("MFM-II"), an eleven-week course that introduced microbiology, immunology, pathology and pharmacology to prepare students for more in-depth courses later. (Leo Dec. ¶ 17.)

43. Shaikh received the failing grade in MFM-II on or about February 16, 2011. (Leo Dec. ¶ 18.)

44. On his first MFM-II examination, Shaikh completed his examination 36.5 minutes early and received a grade of 54.45%. (Shaikh Dep. 112; Ex. 9.)

45. On his second MFM-II examination, Shaikh completed his examination 11.5 minutes early and received a grade of 66%. (Shaikh Dep. 112-13; Ex. 9.)

46. After failing MFM-II, Shaikh received a failing grade in Behavioral Neuroscience ("BNS") on or about April 25, 2011. (Leo Dec. ¶ 19.)

47. On his first BNS examination, Shaikh completed his examination 25 minutes early and received a grade of 64.37%. (Shaikh Dep. 113; Ex. 9.)

48. On his third BNS examination, Shaikh completed his examination 9 minutes early and received a grade of 64.63%. (Shaikh Dep. 113; Ex. 9.)

49. During his deposition, Shaikh acknowledged that it was his responsibility to use all the time DCOM provided in connection with his examinations. He testified as follows:

> Q: You would agree that it was up to you to use the time that DCOM provided to take exams, wouldn't you?
>
> A: Yeah.
>
> Q: And that if you failed to use all the time that was given to you, that was your fault?
>
> A: Yeah.
>
> \* \* \* \*
>
> Q: And it was important to use all that time to make sure you carefully read the question so that you could better answer the questions, is that correct?
>
> A: Yes.

(Shaikh Dep. 113.)

50. Shaikh further testified that:

> Q: You would agree that it's not LMU's fault that you didn't use all the time that was given to you on your exams, wouldn't you?
>
> A: On all?
>
> Q: Wasn't DCOM's fault?
>
> A: It wasn't DCOM's fault that I didn't use all the time?
>
> Q: Right.

A: Yeah.

(Shaikh Dep. 115.)

51. At no time before Shaikh received failing grades in MFM-II and BNS did he request DCOM to provide him with any accommodations different than those provided to him before the Fall 2009 semester. (Shaikh Dep. 62.)

52. After failing BNS and MFM-II, Shaikh met with the Student Progress Committee on April 29, 2011 to discuss his academic performance. (Shaikh Dep. 66-68.)

53. The Student Progress Committee was tasked with the following responsibilities:

> The purpose of the Student Progress Committee (SPOC) is to ensure that every graduate of DCOM has the skills, knowledge, and judgment to assume the responsibilities of an osteopathic doctor. The committee will monitor student progress and ensure that all students meet the requirements necessary for graduation. The Committee, appointed by the Dean, is composed of faculty members and DCOM administration.
>
> At the end of each grading period the Committee reviews progress of students assigned either an "F" or "I" in the course. After reviewing the student's file the committee may recommend one of the following: to allow the student to take a remediation exam, to dismiss the student, to require the student to remediate an entire year of medical school or otherwise after the student's course of study. The committee's recommendations are forwarded to the Academic Dean.

(Stowers Dep. 65; Ex. 2, p. 48.)

54. The DCOM Student Handbook provides, in pertinent part, that:

For students who fail more than two courses during the preclinical years the SPOC may recommend the following:

1. The student must take the course, or courses, at the approved off-campus summer program designed for medical students.

2. The student must take the course, or courses, on campus under the auspices of the DCOM faculty.

3. The student must take a remediation exam, or exams, given by the DCOM faculty.

4. The student must repeat the entire academic year.

5. The student may receive a letter of reprimand from the Dean.

6. The student may be dismissed from DCOM. When a student is dismissed from DCOM a notation will be placed on the transcript that notes the date the student was dismissed.

(Stowers Dep. 65; Ex. 2, pp. 48-49.)

55. During the meeting with the Student Progress Committee, Shaikh stated, among other things, that "I don't think medical school is for me. . . [b]ecause I [have] tried as hard as I could." (Shaikh Dep. 122-23.)

56. Shaikh also advised the Student Progress Committee that he believed he would benefit from a decelerated program that would allow him to complete his education at DCOM in five years rather than four years. (Shaikh Dep. 121.)

57. Shaikh did not request a decelerated five-year program before he failed BNS and MFM-II. (Shaikh Dep. 121-22.)

58. The Student Progress Committee recommended Shaikh be dismissed from DCOM on April 29, 2011. (Shaikh Dep. 127-29; Ex. 12.)

59. At the time the Student Progress Committee made the recommendation to dismiss Shaikh for failure to make adequate academic progress, he had a failing average in two other nineteen-week classes – Essentials of Patient Care II ("EPC II") and Osteopathic Principles and Practice II ("OPP II") — that he had not yet completed. (Shaikh Dep. 155-56; Exs. 12, 13, 24; Leo Dec. ¶ 20.)

60. In EPC II, Shaikh had a 61.10% grade average when he appeared before the Student Progress Committee, but the course was not yet over. (Leo Dec. ¶ 21.)

61. In OPP II, Shaikh had a 63.10% grade average when he appeared before the Student Progress Committee, but the course was not yet over. (Leo Dec. ¶ 22.)

62. On May 1, 2011, Shaikh transmitted an email to Dean Stowers in which Shaikh indicated that he would benefit from a decelerated five-year program rather than a four-year program. (Shaikh Dep. 121; Ex. 11.)

63. Attached to Shaikh's email was his plan for the decelerated five-year program. (Shaikh Dep. 123.)

64. Part of Shaikh's plan extended the time for him to complete classes over the course of a school year. (Shaikh Dep. 123.)

65. Shaikh's proposal, if adopted, would have prevented him from participating in the group examination portion of each class because other students would be on a different examination schedule. (Shaikh Dep. 124-25.)

66. Shaikh's proposal did not require him to complete customary pre-clinical prerequisites prior to participating in clinical rotations. (Leo Dec. ¶ 23.)

67. At the time Shaikh submitted the proposal for a decelerated program to Dean Stowers on May 1, 2013, he did not provide documentation from a health care professional suggesting his accommodation request was necessary. (Leo Dec. ¶ 24.)

68. By not providing a professional opinion that he needed a decelerated program as an accommodation, Shaikh did not comply with the DCOM Student Handbook Policy and Catalog in effect at the time. (Stowers Ex. 2; pp. 84-86.)

69. Shaikh met with Dean Stowers on May 2, 2011 to discuss the Student Progress Committee's recommendation that Shaikh be dismissed. (Shaikh Dep. 76-77.)

70. During the meeting, Dean Stowers notified Shaikh that he had accepted the Student Progress Committee's recommendation that Shaikh be dismissed from DCOM for failure to make adequate academic progress. (Shaikh Dep. 76-77; Ex. 13.)

71. Dean Stowers gave Shaikh a letter confirming his decision to accept the recommendation of the Student Progress Committee during the May 2, 2012 meeting. (Shaikh Dep. 130-31; Ex. 13.)

72. Shaikh appealed Dean Stowers' decision to DCOM's Appeal Board, and set forth the basis for his appeal in a letter dated May 9, 2011. (Shaikh Dep. 156; Ex. 25.)

73. Shaikh's May 9, 2011 letter was the first time he included a professional opinion that DCOM should permit him to complete his degree requirements under a five-year curriculum rather than a four-year program. (Shaikh Dep. 82; Ex. 25.)

74. Shaikh attended the Appeal Board hearing on May 10, 2011, and declared:

> . . . some policies were not followed, and that I had asked for a decelerated curriculum and that, you know, the school didn't offer it. I felt that it would help me get through school if they offered it. I just felt like I needed it.

(Shaikh Dep. 80-81.)

75. On May 10, 2011, DCOM's Appeals Board notified Shaikh that his appeal was denied. (Shaikh Dep. 135-36; Ex. 17.)

76. Shaikh's retroactive request for an accommodation that included a five-year curriculum rather than the four-year program that had been in place at DCOM since its inception was rejected by DCOM. (Leo Dec. ¶ 25.)

77. Shaikh's proposal for a decelerated program was rejected, in part, because it was made after he failed two major classes. (Leo Dec. ¶ 26.)

78. Shaikh's proposal was also problematic because of how it may have resulted in staffing issues at DCOM, the time and effort to go through accreditation for the five-year program, and financial aid issues for students participating in the five-year program. (Stowers Dep. 47-49.)

79. Leo explained why DCOM had not offered a decelerated program to any student as follows:

> Q: Has DCOM ever offered any student a decelerated curriculum?
>
> A: We've never offered – no, never. We've had students go on medical leave and leaves of absence, where they go away from the school for awhile – I guess sort of what Zeeshan did in the Fall semester – but never where we take the curriculum and spread it out over a certain time period like that, no.
>
> Q: Why not?
>
> A: Oh well, that's a great question. These programs require a huge amount of time and effort. They don't just happen sort of overnight. And in fact I think there's some terminology here. There's a five year plan, okay, which several schools, I guess, have in place. Like Western University used to have one in place. But I don't believe that's the same thing that Zeeshan is talking about. Those plans [five year curriculum] are developed with committees and faculty involvement, administrator involvement. Financial aid has to be involved. The Board of Trustees has to approve it. Our accreditors have to be notified 120 days before we implement a plan like that. We would put it on the website, we would talk about it. We would advertise it. We would have an admissions policy for it; who gets into it. That's very different than a student who has failed out of medical school, saying 'You need to give me a customized plan to continue on after I've failed out." Most five year plans would not allow a student who has failed out of medical school to get into the program.

(Leo Dep. 31-32.)

80. Doctor of Osteopathic Medicine students have six years to complete their degrees under the DCOM Student Handbook. (Leo Dec. ¶ 27.)

81. Given the work and approval necessary to implement a five year program, it would not have been ready before the Fall 2011 semester even if DCOM was inclined to go along with Shaikh's request, which DCOM was not. (Leo Dec. ¶ 28.)

Respectfully submitted this 13th day of January, 2014.

s/John E. Winters<br>
John E. Winters (BPR #016345)<br>
KRAMER RAYSON, LLP<br>
P.O. Box 629<br>
Knoxville, TN 37901-0629<br>
Phone: (865) 525-5134<br>
*Counsel for Defendant Lincoln Memorial University*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may gain access to this filing through the Court's electronic filing system.

s/John E. Winters<br>
John E. Winters