IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ZEESHAN SHAIKH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-cv-354 |
| | ) | Collier/Shirley |
| v. | ) | Jury Demand |
| | ) | |
| LINCOLN MEMORIAL UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF LINCOLN MEMORIAL UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

Comes the Defendant, Lincoln Memorial University ("LMU"), by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully requests this Honorable Court to dismiss Plaintiff's lawsuit against LMU because Zeeshan Shaikh ("Shaikh" or "Plaintiff") is unable to establish all of the necessary elements to his claims. LMU further submits that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law.

### I. Facts

The facts material to LMU's Motion for Summary Judgment have been set forth in a Statement of Undisputed Material Facts in accordance with the controlling Scheduling Order. [Doc. 7, Sch. Ord. ¶ 6(b)(i).] LMU incorporates herein by reference, as if copied verbatim, the material facts that are included in its Statement of Undisputed Material Facts. [Doc. ____, St. of Un. Mat. Facts.]

## II. Plaintiff's Claims Against LMU

Shaikh's lawsuit contends that LMU violated his rights under the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") during his enrollment at LMU's DeBusk College of Osteopathic Medicine ("DCOM"). (Comp. § 4.) Specifically, Shaikh claims that LMU violated the Rehabilitation Act "by refusing to provide him reasonable accommodations for taking his tests and refusing to provide a decelerated curriculum that would give Mr. Shaikh additional time to complete courses at DCOM." (*Id.* ¶ 38.) The gravamen of his ADA claim centers around the same allegations. (*Id.* ¶¶ 42-46.) Shaikh's allegations are without merit and should be dismissed as a matter of law.

## III. Summary Judgment Standard

This Court, in *Jackson v. State Dep't of Corr.*, Case No. 1:10-cv-193, 2010 U.S. Dist. LEXIS 133959, *5-6 (E.D. Tenn. Dec. 16, 2010), sets forth the proper standard for ruling on a dispositive motion under Federal Rule of Civil Procedure 56. Summary Judgment is:

> proper when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c). The moving party bears the burden of showing no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The court views the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the nonmoving party is not entitled to a trial based on its allegations alone, but must submit significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).
>
> The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. If the court concludes a reasonable jury could

not find for the nonmoving party, the court should enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Jackson*, 2010 U.S. Dist. LEXIS 133959, *5-6.

Shaikh's allegations against LMU should be dismissed under Federal Rule of Civil Procedure 56 because he cannot establish two of the three necessary elements to his claims under the ADA and the Rehabilitation Act. For each and all of the foregoing reasons, and the reasons set forth hereinafter, summary judgment should be granted.

## IV. ARGUMENT

The Sixth Circuit, in *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432 (6th Cir. 1998), authored the seminal case on post-secondary educational claims under the Rehabilitation Act and the ADA. The application of the *Kaltenberger* decision to the case at bar indicates that Shaikh's Rehabilitation Act and ADA claims should be dismissed as a matter of law, making summary judgment appropriate.

### A. THE REQUIRED ELEMENTS TO ESTABLISH CLAIMS UNDER THE REHABILITATION ACT AND THE ADA.

Claims under the Rehabilitation Act and the ADA are largely the same, causing courts to construe the two federal statutes to impose similar requirements. *See Kaltenberger*, 162 F.3d at 435, n. 4; *Halpern v. Wake Forest Univ. Health Scis.*, No. 10-2162, 2012 U.S. App. LEXIS 5287, *15 (4th Cir. February 28, 2012) (citing *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir. 2002); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57 (4th Cir. 1995)). "The two statutes differ only with respect to the third element, causation." *Halpern*, 2012 U.S. App. LEXIS 5287, *16. "To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion.'" *Id.* (citing *Baird ex*

*rel. Baird v. Rose*, 192 F.3d 462, 468-469 (4th Cir. 1999)). Moreover, a claim under the Rehabilitation Act requires the Plaintiff to establish the defendant receives federal funds, while the ADA has no such requirement. *Kaltenberger*, 162 F.2d at 436, n. 4.

To establish a claim that a student was dismissed from school in violation of either the Rehabilitation Act or the ADA, the plaintiff must demonstrate that "(1) [he] is handicapped or disabled as defined in each statute, (2) [he] is 'otherwise qualified' to continue in the program, and (3) [he] was dismissed from the program on the basis of his handicap or disability." *Kaltenberger*, 162 F.3d at 435 (citing *Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir. 1997); *Ohio Civil Rights Comm'n v. Case W. Reserve Univ.*, 706 Ohio St.3d 168, 174, 666 N.E. 2d 1376 (1996)). The absence of any of the three requisite elements delivers a fatal blow to the plaintiff's claim. *See Id.* at 437.

"In determining whether an individual is disabled, an individualized inquiry must be made and measures that mitigate the individual's impairment must be taken into account." *Brown v. Univ. of Cincinnati*, No. 1-04-164, 2005 U.S. Dist. LEXIS 40798, *22 (S.D. Ohio June 3, 2005) (citing *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) (remaining citations omitted)). "An individual is considered 'disabled' under the ADA if he: (A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) [has] a record of such impairment; or (C) [is] regarded as having such an impairment." *Id.*

"A handicapped or disabled person is 'otherwise qualified' to participate in a program if she can meet its necessary requirements with reasonable accommodation." *Kaltenberger*, 162 F.3d at 435-36 (citing *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1034 (6th Cir. 1995); *Doherty v. Southern College of Optometry*, 862 F.2d 570, 574-75 (6th Cir. 1988)).

"'While a grantee need not be required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones.'" *Id.* at 436 (quoting *Alexander v. Choate*, 469 U.S. 287, 300, 83 L.Ed.2d 661, 105 S.Ct. 712 (1985)).

"However, discrimination laws do not 'require an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person.'" *Id.* (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 413, 60 L.Ed.2d 980, 99 S.Ct. 2361 (1979)). "A modification 'is not reasonable if either imposes undue financial and administrative burdens . . . or requires a fundamental alteration in the nature of the program.'" *Halpern*, 2012 U.S. App. LEXIS 5287, *25 (quoting *Sch. Bd. v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (remaining citations omitted)). "A modification to 'an essential aspect' of the program constitutes a 'fundamental alteration' and, therefore, is an unreasonable accommodation." *Id.* (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682-83, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001)).

The court, in *Kaltenberger*, further recognized that the "College was not obligated to provide accommodation until plaintiff had provided a proper diagnosis" of the alleged disability "*and requested specific accommodation.*" 162 F.3d at 437 (emphasis added). Other courts have reached the same conclusion. *See Carter v. Kent St. Univ.*, 78 Fed. Appx. 499, 501 (6th Cir. 2003) (summary judgment was affirmed, in part, because the plaintiff did not request accommodations from Kent State); *Brown*, 2005 U.S. Dist. LEXIS 40798, *26 ("A publicly-funded university is not obligated to provide an accommodation to a student under the ADA or the Rehabilitation Act until the student has provided a proper diagnosis of his claimed disability and has specifically requested an accommodation."); *Wynne .v Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 795 (1st Cir. 1992) ("A relevant aspect of this inquiry is whether the student ever put

the medical school on notice of his handicap by making 'a sufficiently direct and specific request for special accommodations.'") (quoting *Nathanson v. Medical College of Pa.*, 926 F.2d 1368, 1381 (3d Cir. 1991)); *Axelrod v. Phillips Academy*, 46 F.Supp. 2d 72, 84 (D. Mass. 1999) ("the onus is on the student, or the student's parent, to request such accommodations from the school."). *Carlson v. Carroll Univ.*, Case No. 09-C-551, 2011 U.S. Dist. LEXIS 136545, *31-32 (E.D. Wisc. Nov. 28, 2011) ("at the postsecondary level, 'it is the student's responsibility to make his or her handicapping condition known and to request academic adjustments.'") (quoting U.S. DEPT. OF EDUCATION OFFICE FOR CIVIL RIGHTS, THE CIVIL RIGHTS OF STUDENTS WITH HIDDEN DISABILITIES UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973 (1995)).

Courts "'should show great respect for the faculty's professional judgment'" when reviewing the substance of the academic decisions. *Kaltenberger*, 162 F.3d at 436 (quoting *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225, 88 L.Ed.2d 523, 106 S. Ct. 507 (1985)). In this regard, the *Kaltenberger* court stated:

> 'University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation. [*Ewing*, 474 U.S. at 225, n. 11] (quoting *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n.6, 55 L.Ed.2d 124, 98 S.Ct. 948 (1978) (Powell, J., concurring)). Courts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement. *See McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 859 (5th Cir. 1993); *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992). See also *Ohio Civil Rights Comm'n*, 76 Ohio St.3d at 179.

*Id.* "This admonition is 'especially' true relative to academic decisions which are made in 'the health care field, [where] the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession,' *Kaltenberger*, 162 F.3d at 437, a profession

whose practitioners are entrusted with life and death decisions." *Manickavasagar v. Va. Commonwealth Univ. Sch. of Med.*, 667 F.Supp.2d 635, 643 (E.D. Va. 2009).

### B. SHAIKH IS UNABLE TO SATISFY THE NECESSARY ELMENTS TO HIS REHABILITATION ACT AND ADA CLAIMS.

The foregoing authority indicates that summary judgment is appropriate because Shaikh cannot establish two elements necessary for a claim under either the Rehabilitation Act or the ADA. First, Shaikh is unable to demonstrate that he "is 'otherwise qualified' to continue in the program" at DCOM. *Kaltenberger*, 162 F.3d at 435. Nor can Shaikh establish that he was dismissed from DCOM "on the basis of his handicap or disability." *Id.* The absence of these two elements renders summary judgment appropriate. *See Id.*

#### i. Shaikh is Not "Otherwise Qualified."

To establish that he is "otherwise qualified," Shaikh must demonstrate that he can meet the necessary requirements of the DCOM program "with reasonable accommodation." *See Kaltenberger*, 162 F.3d at 435. The undisputed facts indicate that Shaikh cannot clear this evidentiary hurdle.

Shaikh and DCOM agreed to accommodations for Shaikh that included time and a half and a quiet room for examinations before Shaikh enrolled at DCOM in the Fall 2009. (Shaikh Dep. 61, 108-09; Ex. 2.) Shaikh operated under these agreed upon accommodations during the Fall 2009 semester before his leave of absence for personal reasons and after he returned to DCOM beginning with the Fall 2010 semester. (*Id.*) At no time before he failed his second major pre-clinical course during the Spring 2011 semester did Shaikh request any accommodations different than or in addition to the accommodations to which he agreed before starting at DCOM in the Fall 2009. (*Id.* 62.)

Shaikh's poor academic performance throughout his time at DCOM demonstrates that he is not "otherwise qualified" to satisfy DCOM's academic demands even with the agreed upon accommodations. Before withdrawing from DCOM for personal reasons during the Fall 2009 semester, Shaikh had a failing grade in Medical Gross Anatomy which he stopped taking and failed to take the final examination in another course. (Shaikh Dep. 87, 104; Ex. 4; Leo Dec. ¶ 13.) During the Fall 2010 semester, after he returned to DCOM from the leave of absence, Shaikh passed all of same classes he took the preceding year, only after a grade of 69.58% in Medical Gross Anatomy was rounded up to 70%. (Leo Dec. ¶ 16; Shaikh Dep. Ex. 24.) In the Spring 2011 semester, Shaikh failed two major pre-clinical science courses – Molecular Fundamentals of Medicine II ("MFM-II") and Behavioral Neuroscience ("BNS"). (Leo Dec. ¶¶ 17, 18, 19.) Finally, at the time DCOM's Student Progress Committee made the recommendation to dismiss Shaikh from DCOM on April 29, 2011, he had a failing average in two other pre-clinical courses – Essentials of Patient Care II and Osteopathic Principals and Practice II – that he had not yet completed. (Shaikh Dep. 155-56; Ex. 24; Leo Dec. ¶ 20.)

Despite receiving and having the benefit of the agreed upon accommodations, Shaikh was unable to perform well enough to justify remaining at DCOM. Moreover, the decision to dismiss Shaikh was reasonable given his poor academic performance. As a result, Shaikh cannot establish the second requisite element to his claims under the Rehabilitation Act and the ADA. *See Kaltenberger*, 162 F.3d at 435.

ii.  **Shaikh's Retroactive Request For A Decelerated Program Was Not Timely.**

During his meeting with the Student Progress Committee on April 29, 2011, Shaikh stated that he believed he would benefit from a decelerated program that would allow him to complete his education at DCOM in five years rather than four years. (Shaikh Dep. 121 and

127-29; Ex. 12.) He contradicted this remark by also reporting to the Student Progress Committee that "I don't think medical school is for me. . . " during the same meeting. (Shaikh Dep. 122-23.)

On May 9, 2011, the day before he appeared before the Appeal Board to challenge Dean Ray Stowers' decision to dismiss him from DCOM, Shaikh submitted (for the first time) a professional opinion that DCOM should permit him to complete his degree requirements under a five-year program rather than a four-year curriculum. (Shaikh Dep. 82; Ex. 25.)

Shaikh's retroactive request for a decelerated medical school program is replete with problems. The initial issue with Shaikh's request for a decelerated program is the fact it was made after he failed two pre-clinical science classes (MFM-II and BNS) that resulted in his dismissal from DCOM. *See Kaltenberger*, 162 F.3d at 437 (the "College was not obligated to provide accommodation until plaintiff . . . requested [the] specific accommodation"); *Carter*, 78 Fed. Appx. at 501 (summary judgment was affirmed, in part, because the plaintiff did not request accommodations from Kent State); *Brown*, 2005 U.S. Dist. LEXIS 40798, *26 ("a publicly-funded university is not obligated to provide an accommodation to a student under the ADA or the Rehabilitation Act until the student . . . has specifically requested an accommodation"); *Axelrod*, 46 F. Supp.2d at 84 ("The onus is on the student, or the student's parent, to request such accommodations from the school."). Shaikh cannot overcome the fact he did not request this accommodation until after he failed MFM-II and BNS. *See Kaltenberger*, 162 F.3d at 436 ("Plaintiff had already failed two courses in her first year of the program before she requested any specific accommodation. . . ."); *Wynne*, 976 F.2d at 795-96 (Plaintiff's request to take oral examination was not reasonable because it was not made "at any time prior to taking and failing the third biochemistry exam"); *Manickavasagar*, 667 F. Supp. at 646-47 (accommodation

requests were unreasonable because they were untimely). Summary judgment, therefore, should be granted.

### iii. Shaikh's Request For A Decelerated Program Was Unreasonable Because It Would Require A Fundamental Alteration Of The Program To Implement.

Shaikh's request for a decelerated program was unreasonable because it would require "a fundamental alteration in the nature of the program." *Halpern*, 2012 U.S. App. LEXIS 5287, *25. The fact his request would result in "a fundamental alteration in the nature of the program," *Halpern*, 2012 U.S. App. LEXIS 5287, *25, is best illustrated by Dr. Jonathan Leo's ("Leo") description of what would be required to accommodate Shaikh's retroactive request for an additional year to satisfy DCOM's degree requirements. Leo stated:

> A: Oh well, that's a great question. These programs require a huge amount of time and effort. They don't just happen sort of overnight. And in fact I think there's some terminology here. There's a five year plan, okay, which several schools, I guess, have in place. Like Western University used to have one in place. But I don't believe that's the same thing that Zeeshan is talking about. Those plans [five year curriculum] are developed with committees and faculty involvement, administrator involvement. Financial aid has to be involved. The Board of Trustees has to approve it. Our accreditors have to be notified 120 days before we implement a plan like that. We would put it on the website, we would talk about it. We would advertise it. We would have an admissions policy for it; who gets into it. That's very different than a student who has failed out of medical school, saying 'You need to give me a customized plan to continue on after I've failed out." Most five year plans would not allow a student who has failed out of medical school to get into the program.

(Leo Dep. 31-32.)

It is difficult to imagine a more fundamental alteration to the DCOM program than changing it from a four-year to a five-year program. It would require the formation of a DCOM committee to plan for and propose such a dramatic change to the curriculum. (Leo Dep. 31-32.) It would also require approval to the change in curriculum from LMU's Board of Trustees and DCOM's accreditors. (*Id.*) DCOM would have to enact policies dealing with the curriculum

change. (*Id.*) These are the types of burdens that DCOM is not required to undertake to accommodate Shaikh. *See Halpern*, 2012 U.S. App. LEXIS 5287, *25. ("A modification is not reasonable if it either imposes undue financial and administrative burdens. . . or requires a fundamental alteration in the nature of the program.").

Less burdensome accommodation requests than the decelerated program requested by Shaikh have been rejected by other courts as being unreasonable. *See Kaltenberger*, 162 F.3d 432 (Defendant's decision to deny plaintiff's request to retake an examination she failed already was not unreasonable); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 (8th Cir. 1999) (Defendants' refusal to accommodate plaintiff by allowing him to attend classes at another university was not unreasonable); *Carlson*, 2011 U.S. Dist. LEXIS 136545, * 38-40 (The university's decision to deny plaintiff's request for a tutor and a "do-over" on an examination was not unreasonable). Shaikh's more burdensome accommodation request should not be forced upon LMU because it is unreasonable. *See Id.*

DCOM's decision to deny Shaikh's request for a decelerated program is entitled to "great respect." *Kaltenberger*, 162 F.3d at 436. As stated by the court, in *Kaltenberger*, "[c]ourts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement." 162 F.3d at 436. That is because academic institutions, like DCOM, are better able to determine if a student's accommodation request is reasonable under all the relevant circumstances than are the courts. Moreover, a contrary approach would encourage a flood of litigation relating to rejected accommodation requests, which is counter to sound public policy.

iv.    **Shaikh's Request For A Decelerated Program Is Unworkable.**

Shaikh's ill-conceived request for a decelerated program is unreasonable and should be rejected because it was unworkable. That is because his proposed decelerated curriculum had him taking clinical courses before the prerequisite science classes. There is no doubt that such an approach would create even bigger academic problems for Shaikh during the clinical portion of the program if the plan was adopted.

Shaikh's proposal was fundamentally flawed and DCOM was right to reject it.

v.    **Shaikh Cannot Establish That He Was Dismissed As A Result of His Alleged Disability.**

The undisputed facts indicate that Shaikh cannot establish that he was dismissed from DCOM "on the basis of his handicap or disability," as he is required to do. *Kaltenberger*, 162 F.3d at 435. Instead, Shaikh was dismissed for a legitimate and non-discriminatory reason – he failed to make adequate academic progress during his enrollment at DCOM. (Shaikh Dep. Exs. 12, 13.) The absence of this element renders summary judgment appropriate.

Shaikh's contention that he can demonstrate this element has several flaws. First, Shaikh's argument ignores the fact that he was admitted to DCOM after DCOM officials learned about his reading difficulties. (Shaikh Dep. 45-46.) If LMU intended to discriminate against Shaikh because of his alleged disability, it would not have admitted him as a student at DCOM after learning about his reading difficulties.

Other facts further undercut Shaikh's claim. The fact that DCOM and Shaikh quickly agreed upon accommodations well before he enrolled as a student at DCOM runs counter to Shaikh's claim that LMU discriminated against him on the basis of his alleged disability. Moreover, DCOM would not have assigned Shaikh a tutor in the Fall 2009 semester if it intended to discriminate against him. Finally, Dean Ray Stowers' decision to grant Shaikh's

leave of absence request during the Fall 2009 semester examination period, after he stopped taking one class and failed to take a final examination in another course, indicates DCOM acted in Shaikh's best interest, as Shaikh admitted during his deposition. (Shaikh Dep. 105, 107.) If DCOM intended to dismiss Shaikh for an impermissible reason, it could have denied his request for a leave of absence, which would have placed him at risk for dismissal at the conclusion of the Fall 2009 semester. (Leo Dec. ¶ 14.)

Instead of treating Shaikh with any discriminatory animus, DCOM provided Shaikh the accommodations that he believed were necessary for success at DCOM. Shaikh did not request any additional or different accommodations until after he failed his second pre-clinical science course during the Spring 2011 semester. (Shaikh Dep. 121-22.) The blame for his inaction does not rest with LMU. Instead, it rests squarely with Shaikh. *See Axelrod*, 46 F. Supp.2d at 84 ("the onus is on the student, or the student's parent, to request such accommodations from the school").

Unfortunately for Shaikh, his poor academic performance at DCOM justified his dismissal from the Osteopathic Medicine program. (Stowers Dep. Exs. 12, 13.) The record is void of any fact that suggests his dismissal was for any improper purpose or in violation of either the Rehabilitation Act or the ADA. Shaikh, therefore, is unable to establish the necessary element that the decision to dismiss him from DCOM was made "on the basis" of his alleged disability. *Kaltenberger*, 162 F.3d at 435.

### vi. DCOM's Decision To Dismiss Shaikh is Entitled to Great Respect.

DCOM's decision to dismiss Shaikh is entitled to "'great respect'" by this honorable Court. *Kaltenberger*, 162 F.3d at 436 (quoting *Ewing*, 474 U.S. at 225). As recognized by the court, in *Kaltenberger*, DCOM "must have the widest range of discretion in making judgments

13

as to the academic performance of students and their entitlement to promotion or graduation." 162 F.3d at 436. This is particularly true here because DCOM confers degrees in the healthcare field, which "'places the school's imprimatur upon the student as qualified to pursue his chosen profession,'. . . a profession whose practitioners are entrusted with life and death decisions." *Manickavasagar*, 667 F. Supp.2d at 643 (quoting *Kaltenberger*, 162 F.3d at 437.)

The court, in *Manickavasagar*, seems to understand that an institution, like DCOM, is better equipped than a court to make decisions regarding the academic progress, or lack thereof, of its students. It also seems to understand that institutions, like DCOM, have a right to be concerned about its reputation when making decisions about the academic progress of students who are studying to enter "a profession whose practitioners are entrusted with life and death decisions." *Manickavasagar*, 667 F. Supp.2d at 643. If these concerns were not legitimate, institutions, like DCOM, would have little incentive to dismiss unqualified students as long as the unqualified students continued to pay tuition and other fees. Such a result runs counter to sound public policy and should not be encouraged here.

## V. CONCLUSION

For each and all of the foregoing reasons, LMU respectfully requests this Honorable Court to grant its Motion for Summary Judgment and dismiss Shaikh's action with prejudice.

Respectfully submitted this 13th day of January, 2014.

s/John E. Winters
John E. Winters (BPR #016345)
KRAMER RAYSON, LLP
P.O. Box 629
Knoxville, TN 37901-0629
Phone: (865) 525-5134
*Counsel for Defendant Lincoln Memorial University*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may gain access to this filing through the Court's electronic filing system.

                                                s/John E. Winters
                                                John E. Winters