IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ZEESHAN SHAIKH, | ) |
| Plaintiff, | ) No. 3:11-cv-354 |
| | ) Collier/Shirley |
| v. | ) Jury Demand |
| | ) |
| LINCOLN MEMORIAL UNIVERSITY, | ) |
| Defendant. | ) |

**LINCOLN MEMORIAL UNIVERSITY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Comes the Defendant, Lincoln Memorial University ("LMU"), by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully submits this Reply Brief in Support of its Motion for Summary Judgment. For the reasons stated below and those provided previously, LMU respectfully submits that Zeeshan Shaikh's ("Shaikh") case against LMU is without merit and should be dismissed.

### I. Introduction

Shaikh's Memorandum in Response to Defendant's Motion for Summary Judgment ("Shaikh's Response Brief") ignores undisputed evidence, his own testimony, controlling authority, and relies upon evidence that is either taken out of context or is irrelevant to the motion at issue. More importantly, Shaikh fails to raise any material factual dispute necessary to survive summary judgment. Summary judgment, therefore, is appropriate and should be granted.

## II. Facts Cited by LMU

It is worth pointing out many of the facts that Shaikh does not challenge. Most significantly, Shaikh does not dispute the fact that he responded to Jonathan Leo's ("Leo") decision to provide "time and a half on written exams and a quiet room" as an accommodation by stating in an email: "That sounds fine. I have received 50% more time throughout undergrad and that worked fine." (Doc. 12, LMU's St. of Un. Facts ¶s 20-21.) Nor does Shaikh contest the fact that at no time before he received failing grades in Molecular Fundamentals of Medicine II ("MFM-II") and Behavioral Neuroscience ("BNS") did he request DeBusk College of Osteopathic Medicine ("DCOM") to provide him with any accommodations different than those provided to him before the Fall 2009 semester. (*Id.* ¶ 51.)

Shaikh does not challenge the fact that he failed to use all of the time allotted to him during the MFM-II and BNS examinations that he failed during the Spring 2011 semester. (Doc. 12, LMU's St. of Un. Facts ¶s 49-50.) Moreover, Shaikh does not dispute the fact that it was his responsibility to use all the time DCOM provided in connection with his examinations and his failure to do so was not DCOM's fault. (*Id.* ¶ 49.)

Nor does Shaikh challenge the fact that the Student Progress Committee was authorized to recommend his dismissal from DCOM based upon his academic performance. (Complaint ¶ 21.) Shaikh does not contest the fact that the DCOM Student Handbook authorized the Student Progress Committee "to ensure that every graduate of DCOM has the skills, knowledge and judgment to assume the responsibilities of an osteopathic doctor." (Doc. 12, LMU's St. of Un. Facts ¶ 53.)

2

Shaikh does not dispute the fact that he first requested a decelerated five-year program after he failed MFM-II and BNS. (Doc. 12, LMU's St. of Un. Facts ¶ 57.) He also does not challenge the fact that he failed to submit documentation from a healthcare professional suggesting a five-year decelerated program was necessary until after Dean Ray Stowers ("Dean Stowers") accepted the recommendation of the Student Progress Committee to dismiss Shaikh on May 2, 2011. (*Id.* ¶s 67-73.) Nor does Shaikh contest the fact that the governing Student Handbook Policy and Catalog required him to provide a professional opinion that he needed a specific accommodation before it could be considered. (*Id.* ¶ 68.)

Shaikh does not dispute the fact that the five-year decelerated program he requested failed to require him to complete customary pre-clinical prerequisites prior to participating in clinical coursework. (Doc. 12, LMU's St. of Un. Facts ¶ 66.) Nor does he challenge the fact that his proposal for a five-year plan would have prevented him from participating in the group examination portion of each class because other students would be on a different examination schedule. (*Id.* ¶ 65.)

Shaikh failed to contest the fact that LMU rejected his request for a five-year decelerated program, in part, because it was made after he failed two major classes. (Doc. 12, LMU's St. of Un. Facts ¶ 77.) Nor did he challenge the fact that his accommodation request was unworkable and may have resulted in staffing, financial and administrative issues. (*Id.* ¶ 78.)

### III. Several of the Facts Relied Upon by Shaikh Should Be Placed In Their Proper Context.

Several of the facts included in Shaikh's Response Brief need to be placed in their proper context. First, Shaikh contends that he was "granted only the 'standard'

3
Case 3:11-cv-00354-PLR-CCS  Document 21  Filed 03/19/14  Page 3 of 13  PageID #: 794

accommodations." (Doc. 13, Shaikh's Res. Br. p. 2.) That is because many of the accommodations suggested by his health care professional were already provided by DCOM to all students, including Shaikh. (Doc. 12, LMU's St. of Un. Facts ¶s 9-12.) For example, DCOM students, including Shaikh, had access to videotapes of each lecture and lecture notes and PowerPoints prepared by DCOM professors. (*Id.*) DCOM students, including Shaikh, were able to review the lecture videotapes, lecture notes and PowerPoints as many times as necessary. (*Id.*) These resources rendered unnecessary many of the suggestions offered by Shaikh's health care professional.

Another accommodation suggested by Shaikh's health care professional was unnecessary because DCOM allowed all of its students, including Shaikh, to use computers for examinations. (Leo 2nd Dec. ¶ 3.)

Shaikh's Response Brief also ignores the fact that DCOM provided him with a tutor in August 2009, shortly after he enrolled at DCOM, and in January 2011, after he started struggling in MFM-II. (Doc. 12, LMU's St. of Un. Facts ¶ 26, Shaikh Dep. Ex. 25.) These steps were designed to help Shaikh succeed at DCOM. If DCOM intended to discriminate against Shaikh, it would not have provided him tutors so he could improve his academic performance.

Most significantly, Shaikh ignores the fact that he agreed to the accommodations offered by DCOM. (Doc. 12, LMU's St. of Un. Facts ¶s 20-21.) Specifically, he responded "That sounds fine. I have received 50% more time throughout undergrad and that worked fine" to the accommodations offered by DCOM. (*Id.*) Based on Shaikh's response, it was reasonable for DCOM to conclude that any additional accommodations were unnecessary. That is particularly true given the fact Shaikh did not request any

additional accommodations over a three semester period until after he failed MFM-II and BNS. (*Id.* ¶ 51.)

Shaikh also ignores the fact another report cited in Shaikh's Response Brief – the February 24, 2010 Report published by the Marshall HELP Program ("Marshall Report") – suggests the 50% additional time accommodation for examinations offered by DCOM and agreed upon by Shaikh was reasonable.[1] (Leo 2nd Dec. Ex. 1.) The Marshall Report provided, in pertinent part, that:

> [a]s an accommodation for his reading and attention problems, [Shaikh] should be granted extended time in a separate, distraction free environment for exams. This would help him to better demonstrate his knowledge rather than his disability.

(*Id*; p. 12.) Nowhere in the Marshall Report does it even suggest that Shaikh needed 100% additional time for examinations as an accommodation. (*Id.*)

Shaikh suggests DCOM did not follow its policy relating to accommodation requests. (Shaikh's Res. Br. p. 3.) In a hyper-technical sense that may be true. Practically speaking, however, DCOM satisfied the spirit of the policy and accomplished the policy's goals through the email correspondence between Leo and Shaikh. (Doc. 12, LMU's St. of Un. Facts ¶s 20-21.) In the email exchange, DCOM and Shaikh agreed in writing to reasonable accommodations relating to his education at DCOM. (*Id.*) While the communication may not have been in person or over the telephone and the agreement relating to the accommodations may not have been signed by Shaikh and DCOM officials, the policy's goal of arriving at agreed upon accommodations was accomplished

---

[1] The Marshall Report was published after Shaikh's leave of absence from DCOM and before the Spring 2011 semester. (Leo 2nd Dec. Ex. 1.) The Marshall Report indicates that Shaikh improved his reading skills during the course of the Program and was provided tools to build upon the improvement he had made. (*Id.*)

5
Case 3:11-cv-00354-PLR-CCS Document 21 Filed 03/19/14 Page 5 of 13 PageID #: 796

and the terms of the agreement were memorialized. Shaikh does not dispute these critical facts.

Shaikh states that there was "no discussion by Dr. Leo or Dean Stowers with Mr. Shaikh to attempt to refine his request or explain why it was not a reasonable request" in connection with his request for a five-year decelerated program. (Shaikh's Res. Br. p. 6.) Even Shaikh's own expert witness testified that DCOM was under no obligation to consider Shaikh's request for a five-year decelerated program because it was made after he failed the two classes that resulted in his dismissal from DCOM. (Premo Dep. 95-96, 98-99.) Brenda Premo ("Premo") testified as follows:

> Q: The Wynne case recognizes the fact that an accommodation request after the student fails an exam is too late; isn't that correct?
>
> A: Yes. And I agree with that. I have no problem with that. Can be too late, the school can make an option to do something, but as far as the law is concerned, you don't have to.
>
> Q: Law indicates that it's too late unless the university wants to –
>
> A: That's right, yeah.

(Premo Dep. 98-99.) Premo further testified that "we explain to the student clearly, that anything that happened before the committee – say he failed two classes, the committee has the right to fail them" in connection with her opinion that university has no obligation to grant a retroactive accommodation request. (*Id.* 95-96.) It goes without saying that if DCOM had no obligation to provide a five-year decelerated program to Shaikh, it was under no duty to have a substantive conversation about the merits of his untimely request.

6
Case 3:11-cv-00354-PLR-CCS   Document 21   Filed 03/19/14   Page 6 of 13   PageID #: 797

and the terms of the agreement were memorialized. Shaikh does not dispute these critical facts.

Shaikh states that there was "no discussion by Dr. Leo or Dean Stowers with Mr. Shaikh to attempt to refine his request or explain why it was not a reasonable request" in connection with his request for a five-year decelerated program. (Shaikh's Res. Br. p. 6.) Even Shaikh's own expert witness testified that DCOM was under no obligation to consider Shaikh's request for a five-year decelerated program because it was made after he failed the two classes that resulted in his dismissal from DCOM. (Premo Dep. 95-96, 98-99.) Brenda Premo ("Premo") testified as follows:

> Q: The Wynne case recognizes the fact that an accommodation request after the student fails an exam is too late; isn't that correct?
>
> A: Yes. And I agree with that. I have no problem with that. Can be too late, the school can make an option to do something, but as far as the law is concerned, you don't have to.
>
> Q: Law indicates that it's too late unless the university wants to –
>
> A: That's right, yeah.

(Premo Dep. 98-99.) Premo further testified that "we explain to the student clearly, that anything that happened before the committee – say he failed two classes, the committee has the right to fail them" in connection with her opinion that university has no obligation to grant a retroactive accommodation request. (*Id.* 95-96.) It goes without saying that if DCOM had no obligation to provide a five-year decelerated program to Shaikh, it was under no duty to have a substantive conversation about the merits of his untimely request.

## IV. Argument

Shaikh's legal theories have shifted somewhat since filing this lawsuit. In his Complaint, Shaikh made the following allegations:

> [a]s a result of LMU denying Mr. Shaikh's request for reasonable accommodations, he was not able to pass all required academic courses. LMU refused to reduce his course load as an accommodation that would have allowed him additional time to learn the material required for each academic course. LMU did not allow him sufficient time for exams by allowing him only 50% extra time for test taking, rather than 100% extra time as recommended in his evaluation.

(Complaint ¶ 30.) He made almost identical allegations elsewhere in the Complaint. (*Id.* ¶s 38, 43.)

Even before he filed the Complaint, Shaikh made essentially the same allegations before DCOM's Appeal Board. (Shaikh Dep. Ex. 25.) In his May 9, 2011 letter ("Appeal Letter") to DCOM's Appeal Board, Shaikh focused on DCOM's decision to deny his request for a five-year decelerated program. (*Id.*) Shaikh's Appeal Letter does not contend that his poor academic performance was caused by the fact that DCOM failed to provide him books on a CD. (*Id.*)

Shaikh's Response Brief, for the first time, asserts that his academic problems may relate to the fact that "LMU-DCOM did not provide the accommodation requested by two separate evaluations for computer based software to assist him [to] read written material. . . ."[2] (Shaikh's Res. Br. p. 7.) While this shift in strategy became convenient

---

[2] The Neurobehavioral Associates report states Shaikh should have "Access to software such as Kurzweil" and "Access to books/CD on tape." (Shaikh Dep. Ex. 25, p. 16.) The Marshall Report indicates that Shaikh should continue "use of the AceReader or other computer-based reading software," which it described as being "essential for [Shaikh] to maintain and build upon the reading improvements made while at the program." (Leo 2nd Dec. Ex. 1, p. 12.) It is clear from the Marshall Report that this particular suggestion was directed to Shaikh rather than LMU.

because the theories Shaikh asserted in his Complaint and Appeal Letter are replete with problems, it does not spare his claim from dismissal.

### A. Shaikh's Claim That 100% Additional Time For Examinations Would Have Made A Difference Is Not Credible.

The myth that Shaikh would have performed better had DCOM provided him 100% extra time for examinations, rather than the agreed upon 50% extra time, was exploded when DCOM records demonstrated that Shaikh did not use all of the time allotted to him in the failed courses that resulted in his dismissal. (Doc. 12, LMU's St. of Un. Facts ¶s 42-48.) Given these undisputed facts, Shaikh cannot argue that additional time would have improved his academic performance. By embracing his new theory, Shaikh seems to concede as much.

### B. Shaikh's Request For A Decelerated Program Is Riddled With Problems.

Presumably, Shaikh understands that his retroactive request for a five-year decelerated program is equally flawed. If this point was not clear before Premo's deposition, it should be now.[3] As stated previously, Premo testified DCOM was under no obligation to provide his retroactive request for the five-year decelerated program. (Premo Dep. 95-96, 98-99, 112.) Premo also undercut Shaikh's claim by testifying that she could not opine that his request for a five-year decelerated program was reasonable under the relevant circumstances:

> Q: On the bottom of page 11 of your report you indicate – 'I am not suggesting that these options absolutely would work in a school the size of DeBusk College of Osteopathic Medicine'; is that correct?
>
> A: That's correct.

---

[3] Premo was identified by the Plaintiff as an expert witness, and her deposition was taken on January 13, 2014. (Premo Dep. p. 4.)

> \* \* \* \*
>
> Q: You didn't form an opinion in your – that you expressed in your report. That a decelerated program would be reasonable under all the circumstances, did you?
>
> A: Oh, no.

(Premo Dep. 90-91.)

Shaikh must also understand that he is unable to establish the five-year decelerated program request was reasonable under all relevant circumstances because he has not offered any evidence even suggesting that it was possible, much less reasonable, for DCOM to implement. In fact, Premo specifically declined to offer such an opinion when given the opportunity. (Premo Dep. 90-91.) The absence of such evidence delivers a fatal blow to this argument.

Shaikh's argument that his request for a five-year decelerated program was not untimely is without merit. (Doc. 13, Shaikh's Res Br. p. 5.) First, he does not include any case law supporting his conclusory assertion. Nor does he address the authority cited by LMU, indicating his request was not timely. (Doc. 11, LMU's Mem. of Law p. 9.) Moreover, Shaikh's contention is squarely at odds with Premo's testimony that DCOM had no obligation to grant a retroactive accommodation request. (Premo Dep. 95-96, 98-99) ("we explain to the student clearly, that anything that happened before the committee – say he failed two classes, the committee has the right to fail them.")

As recognized by Premo and the authority cited in LMU's Brief, an after-the-fact accommodation request is not timely. *See Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 437 (6th Cir. 1998) (the "College was not obligated to provide accommodation until plaintiff requested [the] specific accommodation"); *Wynne v. Tufts*

*Univ. Sch. of Med.*, 976 F.2d 791, 795-96 (1st Cir. 1992) (Plaintiff's request to take oral examination was not reasonable because it was not made "at any time prior to taking and failing the third biochemistry exam"); *Manickavasagar v. Commonwealth Univ. Sch. of Med.*, 667 F. Supp. 2d 635, 643 (E.D. Va. 2009) (accommodation requests were unreasonable because they were untimely).

Shaikh also failed to address LMU's argument that his request for a five-year decelerated program was unworkable. (Doc. 11, LMU's Mem. of Law p. 12.) His proposal had him taking clinical courses before the prerequisite science classes, which would have created bigger academic problems for Shaikh during the clinical coursework portion of the program had his ill-conceived plan been adopted. It also would have prevented him from participating in the group examination portion of each class. DCOM was right to reject his fundamentally flawed plan.

Shaikh also argues that DCOM's position that "an accommodation of a decelerated program would require a fundamental alteration of the DCOM program from a four-year to a five-year program is suspect." (Doc. 13, Shaikh's Res. Br. p. 8.) To make this argument, Shaikh relies upon a hearsay statement included in Premo's Declaration. (*Id.*) Shaikh's argument, however, ignores Premo's deposition testimony in which she testified that she could not say Shaikh's request for a decelerated program was reasonable under the relevant circumstances. (Premo Dep. 90-91.) It also ignores the undisputed facts set forth by LMU indicating the proposed decelerated program was unworkable. (Doc. 12, LMU's St. of Un. Facts ¶s 65-66.) Shaikh's argument is without merit.

### C. Shaikh's New Theory Fails to Save The Day.

The reason Shaikh has shifted strategies at this stage of the proceedings is simple. As Shaikh has come to understand the significant flaws with his original theories should close the door on his case, he is looking for another opening through which he can obtain relief. Unfortunately for Shaikh, there are no doors from which he can emerge to survive summary judgment.

Undercutting Shaikh's new theory that he should have been provided books on CD is the fact he never raised the issue with DCOM officials after he agreed upon the accommodations provided to him in 2009. (Doc. 12, LMU's St. of Un. Facts ¶ 20-21, 51.) During the three semesters Shaikh attended DCOM, it is reasonable to conclude that he would have advanced his new theory if he believed it would have helped him succeed. Even after Shaikh failed MFM-II and BNS and appeared before the Student Progress Committee, Dean Stowers and, later, the Appeals Board, Shaikh did not even suggest that his poor academic performance could be turned around by listening to books on CD. (Shaikh Dep. Ex. 25.) His silence speaks volumes.

Shaikh's new theory also ignores the fact that he agreed to specific accommodations before starting at DCOM that did not include DCOM providing him with books on CD. (Doc. 12, LMU's St. of Un. Facts ¶s 20-21.) His email to Leo suggests that Shaikh did not believe that books on CD were necessary for him to succeed at DCOM. (*Id.*) From the time he reached the agreement with DCOM until he failed his second class in the Spring 2011 semester, Shaikh did not request DCOM officials to

provide him with an accommodation that included books on CD. (*Id.* ¶ 51.) His failure to do so closes the door on this recently raised claim.

### D. Shaikh's Suggestion That The Agreed Upon Accommodations Were Not Effective Is Without Merit.

Shaikh argues that the accommodations provided by DCOM "must be effective," and cited an employment law case to support his position. (Doc. 15, Shaikh's Res. Br. p. 4, citing *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996)). It almost goes without saying that an employment setting in a department store is different than enrolling as a student at DCOM. Shaikh's reliance upon this inapposite case suggests that he could not find such a requirement in a case involving an educational institution.

The fact that Shaikh accepted the accommodations provided by DCOM, and did not request any additional accommodations even after he failed MFM-II during the Spring 2011 semester, further undercuts this argument. That Shaikh believed the accommodations offered by DCOM were effective is clear from his email to Leo in which he declared the same accommodations "worked fine" at McDaniel College. (Doc. 12, LMU's St. Un. Facts. ¶s 21-22.) His failure to request any additional accommodations until after he failed MFM-II and BNS and was before the Student Progress Committee indicated that he continued to believe his accommodations were appropriate until after he failed his second major class. His argument is without merit.

## V. Conclusion

For each and all of the foregoing reasons and all of the reasons expressed previously, LMU respectfully requests this Honorable Court to dismiss the Plaintiff's Complaint with prejudice.

Respectfully submitted this 10th day of February, 2014.

        s/John E. Winters
        John E. Winters (BPR #016345)
        KRAMER RAYSON, LLP
        P.O. Box 629
        Knoxville, TN 37901-0629
        Phone: (865) 525-5134
        *Counsel for Defendant Lincoln*
        *Memorial University*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may gain access to this filing through the Court's electronic filing system.

        s/John E. Winters
        John E. Winters