UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ZEESHAN SHAIKH, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| v. | ) | No. 3:11-CV-354 |
| | ) | (Collier/Shirley) |
| LINCOLN MEMORIAL UNIVERSITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Zeeshan Shaikh makes the following response to Defendant's Motion for Summary Judgment:

The Defendant's motion asks the Court to find, as a matter of law, that Plaintiff was not "otherwise qualified" to continue in the program at LMU-DCOM, and that he was not dismissed "on the basis of his handicap or disability," relying to a great extent on *Kaltenberger v. Ohio College of Podiatric Medicine,* 162 F.3d 432 (6th Cir. 1998).

The facts in *Kaltenberger* are substantially different than the facts in this case. Specifically, the student in *Kaltenberger* did not provide her college any documentation of her ADHD disability, nor did she request any accommodation for her disability, until after she had failed two courses in her first year of the program. After she did provide documentation, the college reinstated her as a student in a five-year program and offered nine of eleven accommodations that she requested. When she failed biochemistry for a second time, she was dismissed.

In this case, Mr. Shaikh provided documentation with recommendations for specific accommodations before he began classes. He was granted only the "standard" accommodations LMU provides to any student with ADHD or a learning disability. There was no determination by DCOM that other accommodations Mr. Shaikh requested were not reasonable, or that they would require the College to alter its standard policy.

DCOM did not follow its own policy from the beginning. It was well aware of Mr. Shaikh's disability in comprehending reading material. The evaluation provided to LMU-DCOM before Mr. Shaikh started classes clearly recommended 100% extra time for test taking. And, despite the recommendations by two different evaluators that Mr. Shaikh needed computer software that would read written material to him, that accommodation was never provided and never considered by the College.

When Mr. Shaikh later requested an extended curriculum in which to take the required basic courses, that request was denied out of hand without any real investigation or consideration whether it was a reasonable accommodation request. His request was made before a final decision was made about his dismissal. Unlike in ***Kaltenberger***, he was not reinstated with additional accommodations provided.

## I. LMU Did Not Follow Its Own Process

LMU-DCOM had a process for determining what reasonable accommodations would be provided to a student who requested accommodations due to a disability; that process was not followed.

F. Process for Receiving Reasonable Accommodations

All documentation related to the student's disability and accommodations shall be maintained by the Assistant Dean of Students. Upon receipt of the documentation, the Assistant Dean of Students will meet with the student, either in person or by telephone, to discuss and make arrangements for accommodations for the upcoming semester. A Student Disabilities form will be completed listing the agreed upon accommodations, and will be signed by the student, the student's faculty members and the Assistant Dean of Students. This process shall be followed each semester for which the student wishes to request accommodations. If a problem arises concerning the reasonable accommodations, the student should contact the Assistant Dean of Students (Ext. 7094).

LMU Handbook, Fall 2009, p. 85.

Dr. Jonathan Leo is the Assistant Dean of Students. (Leo Dep. p. 16) He received documentation from Mr. Shaikh related to his disability and recommendations for accommodations. Dr. Leo did not meet with or call Mr. Shaikh to discuss the accommodation request. This was handled with an email from Dr. Leo telling Mr. Shaikh that he would get time and a half for tests and a quiet room. No Student Disabilities form was completed listing the accommodations.

Dr. Leo testified in deposition:

Q: And am I correct that for Mr. Shaikh, that you did not develop a written accommodation plan?
A: We have a fairly standard accommodation plan. The students get time and a half, plus a quiet room.
Q: So those are the only accommodations that you provide?
A: That's all we've done.
Q: Okay. And is that written down?
A: It's not written down per se, no.
* * *
Q: So there wasn't really any consideration of any additional time for Mr. Shaikh?
A: I mean, I talked with him and said it's time and a half, and he agreed that that was–that seemed fine with him.
Q: Well now, did you talk to him or did you e-mail him?
A: Well, I e-mailed him.

3

Leo Dep. pp. 17-18.

* * *

    Q: Do you provide any special software for students that might need it to have things read to them?
    A: We don't. I think virtually most of the text books you can get online now. And I think there are programs. We don't have that.
    Q You don't provide that?
    A: A program that reads the textbook, no.

Leo Dep. pp. 20-21.

* * *

    Q: When you get a request for accommodations . . .what is your procedure in reviewing a request for accommodations?
    A: I read the letter. I look at everything. And, again, we have a fairly standard–I mean as soon as they say ADHD, dyslexia, sometimes it's anxiety, our standard is pretty much time and a half and a quiet room. . . .

Leo Dep. p. 47.

## II. The Accommodations Provided Must Be Effective

Although a school may have some discretion in determining what accommodations it provides, the accommodations provided must be effective. **Hankins v. The Gap, Inc**., 84 F. 3d 797, 800 (6th Cir. 1996) (company did not have to provide a specific accommodation so long as it made available other and *effective* accommodations).

An institution has a "duty to make itself aware of the nature of the student's disability; to explore alternatives for accommodating the student; and to exercise professional judgment in deciding whether the modifications under consideration would give the student the opportunity to complete the program without fundamentally or substantially modifying the school's standards." **Wong v. The Regents of the University of California**, 192 F. 3d 807, 818 (9th Cir. 1999) See also, **Wynne v. Tufts University School of Medicine**, 932 F. 2d 19 (1st Cir. 1990)

4

"A handicapped or disabled person is 'otherwise qualified' to participate in a program if she can meet its necessary requirements with *reasonable accommodations*." **Kaltenberger**, 162 F. 3d at 435 (emphasis added). In the case of **Steere v. George Washington University**, 368 F. Supp. 2d 52 (DCDC 2005), the court addressed the issue of whether the student was otherwise qualified:

> Defendant argues that plaintiff is not otherwise qualified because he has not, to date, performed up to standards. Defendants miss the point. Plaintiff never benefitted from accommodations at the School, and therefore his record at the School tells us nothing about how he would perform with accommodations.

*id.* 368 F. Supp. 2d at 55. Because LMU-DCOM did not provide reasonable and necessary accommodations to Mr. Shaikh, its argument that he is not otherwise qualified cannot stand. LMU-DCOM simply made no inquiry, investigation or determination that Mr. Shaikh's requested accommodations were not reasonable or unnecessary. (Premo Declaration, ¶7)

### III. Plaintiff's Request For Extended Curriculum Was Not Untimely

Mr. Shaikh made his request for an extended curriculum to The Student Progress Committee, and to Dean Stower and Dr. Leo before the Dean made a decision to accept the SPC's recommendation of dismissal. And, he provided documentation to the Appeals Board before it made the final decision that he would be dismissed. (Shaikh Declaration, ¶¶20-24)

The SPC had options other than dismissal that it could recommend to the Dean:

1. The student must take the course, or courses, at an approved off-campus summer program designed for medical students.
2. The student must take the course, or courses, on-campus under the auspices of the DCOM faculty.
3. The student must take a remediation exam, or exams, given by the DCOM faculty.
4. The student must repeat the entire academic year.
5. The student may receive a letter of reprimand from the Dean.

LMU-DCOM Student Handbook, 2010-2011, p. 48-49. (LMU Appendix)

5

There is nothing in the record to indicate that the SPC, either dean, or the Appeals Board made any investigation or gave close consideration as to whether an extended curriculum for Mr. Shaikh was "reasonable."

## IV. Plaintiff's Request Would Not Require a Fundamental Alteration of The Program.

Dr. Leo testified at his deposition that if such an extended curriculum was offered to Mr. Shaikh as an accommodation, an extended curriculum would have to be provided for all students "in the interest of fairness." Leo Dep. pp. 32-33. Such a position circumvents the purpose of the ADA and Section 504 that emphasizes reasonable accommodations for individuals designed to allow access to the benefit (medical school program) offered by the school. There was no discussion by Dr. Leo or Dean Stowers with Mr. Shaikh to attempt to refine his request or explain why it was not a reasonable request.

The First Circuit Court of Appeals explored the issue of determining whether the accommodations requested are reasonable.

> First, as we have noted, there is a real obligation on the academic institution to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation.

*Wynne v. Tufts University School of Medicine*, 932 F. 2d 19 (1st Cir. 1990) (*en banc*). That court denied summary judgment to Tufts and rejected an argument that would prohibit a "judicial override" of an institution's decision to deny an accommodation without "assessing whether professional judgment has been exercised in exploring reasonable alternatives for accommodating a handicapped person." *id*. at 26. [It should be noted that when the same case came back before the First Circuit with a more complete record establishing valid reasons for

6

denying the requested accommodation, the court upheld summary judgment for the school. ***Wynne v. Tufts University School of Medicine***, 976 F. 2d 791 (1st Cir. 1992)]

The record in this case shows that LMU-DCOM made no conscientious effort to determine whether the accommodations requested by Mr. Shaikh were reasonable. The record shows only that the school offered him the accommodations that were offered to other students with no particularized determination that those accommodations would benefit Mr. Shaikh.

In addition, federal regulations that apply to Postsecondary Education, allow certain changes in programs to accommodate qualified handicapped students. Such modifications "may include changes in the length of time permitted for the completion of degree requirements, substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in which specific courses are conducted. 34 C.F.R. §104.44(a).

**V. Plaintiff Was Dismissed by LMU-DCOM Due To His Impaired Reading Ability.**

Mr. Shaikh failed two academic courses in his second semester at DCOM. In his repeat of first semester courses in Fall 2010, he passed all courses that he had taken in Fall 2009. When he had taken the same courses the previous Fall Semester, he had struggled in those courses. The repetition and additional time to absorb the material arguably helped. Because LMU-DCOM did not provide the accommodation requested by two separate evaluators for computer-based software to assist him read written material, LMU cannot say whether he would have failed the two courses. LMU denied his request for an extended curriculum to spread out the number of courses he was required to take each semester. Such an accommodation would have reduced the amount of reading required each semester.

7

This case is not like **Kaltenberger** in that she was given a second chance to pass her courses with several accommodations, including a reduced number of courses. She was transferred to a five-year curriculum rather than the standard four-year curriculum. Although she had a disability based on ADHD, she essentially received more accommodations than Mr. Shaikh, who also has a severe learning disability in reading.

**VI. DCOM's Decision to Dismiss Is Not Entitled to Deference Because It Failed to Investigate.**

Although an educational institution's academic decisions are entitled to deference, that deference is not absolute.

> Subsumed within this standard is the institution's duty to make itself aware of the nature of the student's disability; to explore alternatives for accommodating the student; and to exercise professional judgment in deciding whether the modifications under consideration would give the student the opportunity to complete the program without fundamentally or substantially modifying the school's standards.

*Wong*, supra, at 818. That court went on to reject the University's "after the fact justification" because it "obviously does not satisfy the University's obligation to present 'undisputed fact' showing that it conscientiously considered whether possible modification would fundamentally or substantially alter the school's standards when it decided that it could not reasonably accommodate the disabled student." (Citing Wynne, 932 F. 2d at 26.)

LMU-DCOM's argument that Mr. Shaikh's request for an accommodation of a decelerated program would require a fundamental alteration of the DCOM program from a four-year to a five-year program, is suspect. In the Declaration of Brenda Premo, she states that she contacted the person in charge of accreditation for osteopathic colleges and was assured that such a modification for one student would not require a college to have a five-year curriculum

8

for all students. (Premo Declaration, ¶11)

CONCLUSION

For the reasons stated, Plaintiff asks this Court to deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

/s/
William Allen, BPR#004264
MOSTOLLER, STULBERG, WHITFIELD & ALLEN
136 S. Illinois Ave. Suite 104
Oak Ridge, TN 37830
(865) 482-4466
ballen@msw-law.com

**CERTIFICATE OF SERVICE**

I certify that a true copy of Plaintiff's Response to Defendant's Motion for Summary Judgment with attachments was emailed and placed in the U.S. Mail, postage prepaid, to the attorney for Defendant, John Winters, on this 3rd day of February, 2014.

/s/
William Allen

9