UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ZEESHAN SHAIKH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-354-PLR-CCS |
| | ) | |
| LINCOLN MEMORIAL UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

In this action, plaintiff claims that defendant violated his rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, by refusing to provide him reasonable accommodations for taking tests and refusing to provide a decelerated curriculum that would give plaintiff additional time to complete courses at the school. Currently pending before the court is defendant's motion for summary judgment [R. 9], to which plaintiff has responded [R. 22]. The court has carefully considered the pending motion, plaintiff's response, and the supporting exhibits in light of the applicable law. For the reasons stated herein, the court finds defendant's motion for summary judgment well-taken, and the motion will be granted.

## I.  Factual Background

LMU's DeBusk College of Osteopathic Medicine offers a four-year, full-time academic and clinical curriculum leading to a Doctor of Osteopathic Medicine degree.

The curriculum includes two years of pre-clinical science classes and two years of clinical rotations. During the relevant time period, LMU posted all lecture notes and power points prepared by instructors on an electronic Blackboard approximately one week before the class. LMU also posted a videotape of each lecture on its media site on or about the night after the lecture was conducted. LMU students, including plaintiff, had access to the materials posted on LMU's electronic Blackboard and the lecture videotapes on its media site. Students could review the materials on the electronic blackboard and the lecture videotapes as many times as necessary.

Prior to his admission to LMU, plaintiff was diagnosed with Attention Deficit/Hyperactivity Disorder (ADHD) and Dyslexia. Plaintiff was prescribed Adderall to treat his ADHD, and he took Adderall during the period he was a student at LMU. Adderall helped with plaintiff's symptoms by making him more focused. Prior to being accepted to LMU, plaintiff disclosed to LMU that he had difficulty reading. He made this disclosure in the personal statement he submitted to LMU and during his interview with LMU officials.

Plaintiff submitted documentation of his learning disability in reading and ADHD to Jonathan Leo, Ph.D, LMU's Associate Dean of Students, in April 2009, before beginning classes. Based on the documentation, Dr. Leo testified that he determined plaintiff had a significant learning disability that affected his ability to read and comprehend written material. On April 27, 2009, plaintiff sent an email to Leo, inquiring about accommodations for his reading difficulties. On May 15, 2009, in response to plaintiff's request for accommodations, Dr. Leo stated:

2

You will get time and a half on written exams and a quiet room. I'm on the road right now. But I will be back in the office tomorrow if you want to talk about it.

[Plaintiff's Dep. Ex. 2]. Plaintiff responded to Dr. Leo's email stating:

That sounds fine. I have received 50% more time throughout undergrad and that worked fine.

*Id.* Plaintiff avers no formal written accommodation plan was prepared by LMU in response to his request for accommodations. The LMU Student Handbook for Fall 2009 sets out the procedure for receiving reasonable accommodations as follows:

All documentation related to the student's disability and accommodations shall be maintained by the Assistant Dean of Students. Upon receipt of the documentation, the Assistant Dean of Students will meet with the student, either in person or by telephone, to discuss and make arrangements for accommodations for the upcoming semester. A Student Disabilities form will be completed listing the agreed upon accommodations, and will be signed by the student, the student's faculty members, and the Assistant Dean of Students. This process shall be followed each semester for which the student wishes to request accommodations. If a problem arises concerning the reasonable accommodations, the student should contact the Assistant Dean of Students.

[Handbook, p. 85, Defendant's Appendix].

Plaintiff did not request more than 50 percent additional time for examinations prior to the start of classes at LMU in Fall 2009. Plaintiff was allowed to sit at the front of his classes at LMU, as was recommended to him. In addition, plaintiff had access to the school's electronic Blackboard and media site to review lecture notes and power points, as well as videotapes of all lectures. During the Fall 2009 semester, plaintiff took the following classes: Medical Gross Anatomy, Molecular Fundamentals of Medicine I (MFM-1), Foundations of Modern Health Care, Osteopathic Principals and Practice I,

3

and Essentials of Patient Care I, all of which were part of LMU's required pre-clinical curriculum.  In August 2009, the Anatomy Department assigned a tutor to plaintiff.

In October 2009, Plaintiff stopped studying Medical Gross Anatomy to focus on MFM-I.  On December 16, 2009, plaintiff did not take his MFM-I examination.  Plaintiff sent an email to Dr. Leo, stating:

> I did not take the exam today.  I've been having some personal issues and unfortunately, it has interfered with my studies.  I am trying to put these issues behind me and trying to move on.  I realize this is not acceptable and do feel terrible about the whole situation.  I am not sure what happens now.

[Plaintiff's Dep. Ex. 4].

On December 17, 2009, at Leo's recommendation, plaintiff sent a letter to Dean Ray Stowers, asking for permission to take a leave of absence from LMU and return to the school in Fall 2010.  Dean Stowers granted the request the same day and advised plaintiff that he could submit a written request on or before April 1, 2010, to return to LMU in Fall 2010, at which time he would be required to retake all the courses of that semester.  Had Dean Stowers not granted plaintiff's request for a leave of absence, plaintiff would have been at risk for being dismissed from school for failing two classes in the Fall 2009 semester.

Plaintiff sent a letter to Dr. Leo on March 19, 2010, requesting permission to return to LMU as a full-time student in Fall 2010.  When plaintiff applied for readmission, he provided documentation to LMU of a program that he had completed at Marshall University specifically designed for medical students with learning disabilities and/or ADHD.  However, plaintiff's March 19, 2010 letter did not request LMU to

4

provide him with any accommodations other than those provided to him during the Fall 2009 semester. Plaintiff returned to LMU as a student for the Fall 2010 semester, and took classes under the accommodations provided to him the previous year.

During the Fall 2010 semester, plaintiff earned a grade of 69.58% in Medical Gross Anatomy, which was rounded up to 70%, allowing him to pass the class. At no time during the Fall 2010 semester, did plaintiff request LMU to provide him with any different or additional accommodations. Nor did plaintiff request any different or additional accommodations prior to the start of the Spring 2011 semester.

During the Spring 2011 semester, plaintiff failed Molecular Fundamentals of Medicine II (MFM-II), an eleven-week course that introduced microbiology, immunology, pathology, and pharmacology to prepare students for more in-depth courses later. Plaintiff received the failing grade in MFM-II on February 16, 2011. On his first MFM-II exam, plaintiff completed the exam 36.5 minutes early and received a grade of 54.45%. On his second MFM-II exam, plaintiff completed the exam 11.5 minutes early and received a grade of 66%.

After failing MFM-II, plaintiff received a failing grade in Behavior Neuroscience (BNS) on April 25, 2011. On his first BNS exam, plaintiff completed the exam 25 minutes early and received a grade of 64.37%. On his third BNS exam, plaintiff completed the exam 9 minutes early and received a grade of 64.63%. During his examination, plaintiff acknowledged that it was his responsibility to use all the time LMU provided for his examination. He testified as follows:

5

Q.    You would agree that was up to you to use the time that [LMU] provided to take exams, wouldn't you?

A.    Yeah.

Q.    And that if you failed to use all the time that ws given to you, that was your fault?

A.    Yeah.

. . .

Q.    And it was important to use all that time to make sure you carefully read the questions so that you could better answer the questions, is that correct?

A.    Yes.

[Plaintiff's Dep. 113].  Plaintiff further testified:

Q.    You would agree that it's not LMU's fault that you didn't use all the time that was given to you on your exams, wouldn't you?

A.    On all?

Q.    Wasn't [LMU]'s fault?

A.    It wasn't [LMU]'s fault that I didn't use all the time?

Q.    Right.

A.    Yeah.

[*Id*. at 115].  At no time before plaintiff received failing grades in MFM-II and BNS did he request LMU to provide him with any accommodations different from those provided to him before the Fall 2009 semester.

After failing these two classes, plaintiff met with the Student Progress Committee on April 29, 2011, to discuss his academic performance.  The Committee is tasked with

6

monitoring student progress and ensuring that all students meet the requirements

necessary for graduation. The LMU Student Handbook provides, in pertinent part, that:

> For students who fail more than two courses during the preclinical years [the Committee] may recommend the following:
>
> 1.  The student must take the course, or courses, at an approved off-campus summer program designed for medical students.
>
> 2.  The student must take the course, or courses, on-campus under the auspices of the [LMU] faculty.
>
> 3.  The student must take a remediation exam, or exams, given by the [LMU] faculty.
>
> 4.  The student must repeat the entire academic year.
>
> 5.  The student may receive a letter of reprimand from the Dean.
>
> 6.  The student may be dismissed from [LMU]. . . .

[Handbook, p. 49, Defendant's Appendix].

Plaintiff advised the Committee that he believed he would benefit from a

decelerated program that would allow him to complete his education at LMU in five

years rather than four years. Plaintiff did not request a decelerated five-year program

before he failed BNS and MFM-II. This was the first time plaintiff requested any

different or additional accommodations after he agreed with Dr. Leo on the

accommodations provided to him for the Fall 2009 semester. LMU had no decelerated

program at the time. The Committee recommended that plaintiff be dismissed from

LMU on April 29, 2011. At the time the Committee made the recommendation to

dismiss plaintiff for failure to make adequate academic progress, he had a failing average

in two other classes, Essentials of Patient Care II and Osteopathic Principles and Practice II, which he had not yet completed.

On May 1, 2011, plaintiff sent an email to Dean Stowers in which he again indicated he would benefit from a decelerated five-year program rather than a four-year program. LMU states that plaintiff's proposal, if adopted, would have prevented him from participating in the group examination portion of each class because other students would be on a different examination schedule. Also, plaintiff's proposal did not require him to complete customary pre-clinical prerequisites prior to participating in clinical rotation. At the time plaintiff submitted his proposal for a decelerated program, he had not provided documentation from a health care professional suggesting such an accommodation was necessary. The next day, plaintiff met with Dean Stowers, who notified him that he was accepting the Committee's recommendation to dismiss plaintiff from LMU for failure to make adequate academic progress. Following the meeting with plaintiff, Dean Stowers confirmed his decision in a letter to plaintiff.

Plaintiff appealed Dean Stowers' decision to LMU's Appeal Board in a letter dated May 9, 2011. Prior to meeting with the Appeal Board, plaintiff provided LMU with a letter from Dr. Barbara Guyser, Professor of Special Education at Marshall University, recommending a reduced course load that "should result in successful completion of the Basic Science curriculum in three years." Plaintiff's May 9, 2011, letter was the first time he included a professional opinion recommending that LMU should permit him to complete his degree requirements under a five-year curriculum

rather than a four-year curriculum. At the Appeal Board meeting on May 10, 2011, plaintiff told the Board:

> . . . some policies were not followed, and that I had asked for a decelerated curriculum and that, you know, the school didn't offer it. I felt that it would help me get through school if they offered it. I just felt like I needed it.

[Plaintiff's Dep. 80-81]. The Appeal Board notified plaintiff that his appeal was denied on May 10, 2011.

LMU states that plaintiff's proposal for a decelerated program was rejected, in part, because it was made after plaintiff failed two major classes. The proposal was also problematic because it would have resulted in staffing issues at LMU; additional time and effort would be required to go through accreditation for a five-year program; and it would cause financial aid issues for students participating in a five-year program. LMU further states that given the work and approval necessary to implement a five-year program, it would not have been ready before the Fall 2011 semester. Dr. Leo explained why LMU had not offered a decelerated program to any student in his deposition:

> Q.    Has [LMU] ever offered any student a decelerated program?
>
> A.    We've never offered – no, never. We've had students go on medical leave and leaves of absence, where they go away from the school for awhile – I guess sort of what [plaintiff] did in the Fall semester – but never where we take the curriculum and spread it out over a certain time period like that, no.
>
> Q.    Why not?
>
> A.    Oh well, that's a great question. These programs require a huge amount of time and effort. They don't just happen sort of overnight. And in fact I think there's some terminology here. There's a five year plan, okay, which several schools, I guess, have in place. Like Western

9

University used to have one in place. But I don't believe that's the same thing that [plaintiff] is talking about. Those plans [five year curriculum] are developed with committees and faculty involvement, administrator involvement. Financial aid has to be involved. The Board of Trustees has to approve it. Our accreditors have to be notified 120 days before we implement a plan like that. We would put it on the website, we would talk about it. We would advertise it. We would have an admissions policy for it; who gets into it. That's very different than a student who has failed out of medical school, saying "You need to give me a customized plan to continue on after I've failed out." Most five year plans would not allow a student who has failed out of medical school to get into the program.

[Leo Dep. 31-32].

LMU moves to dismiss plaintiff's claims on the grounds that plaintiff is unable to establish (1) that he is "otherwise qualified" to continue in the Doctor of Osteopathic Medicine program, and (2) he cannot establish that he was dismissed from LMU on the basis of his handicap or disability.

Plaintiff responds that he provided documentation with recommendations for specific accommodations before he began classes; however, he was granted only the "standard" accommodations LMU provides to any student with ADHD or a learning disability. Plaintiff further responds that LMU did not follow its own policy from the beginning. It was well aware of plaintiff's disability in comprehending reading material. The evaluation provided to LMU before plaintiff started classes clearly recommended 100% extra time for test taking. Plaintiff also avers he should have been provided with computer software that would read written material to him, but that accommodation was never provided and never considered by LMU. Plaintiff further asserts that when he later requested an extended curriculum in which to take the required basic courses, his request was summarily denied without any real investigation or consideration whether it was a

10

reasonable accommodation request. Therefore, plaintiff argues, LMU's motion for summary judgment should be denied.

## II.   Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or

11

determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

### III. Analysis

Claims under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA) are largely the same, causing courts to construe the two federal statutes to impose similar requirements. *See Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 435, n. 4 (6th Cir. 1998). The two statutes differ only with respect to the third element, causation. *See Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 461 (4th Cir. 2012). To succeed on a claim under the Rehabilitation Act, the plaintiff must establish plaintiff was excluded "solely" by reason of a disability; the ADA requires only that the disability was "a motivating cause" of the exclusion. *Id.*

To establish a claim that a student was dismissed from school in violation of either the Rehabilitation Act or the ADA, plaintiff must demonstrate that (1) plaintiff is handicapped or disabled as defined in each statute, (2) plaintiff is "otherwise qualified" to continue in the program, and (3) plaintiff was dismissed from the program on the basis of plaintiff's handicap or disability. *Kaltenberger*, 162 F.3d at 435.

12

In determining whether an individual is disabled, "an individualized inquiry must be made and measures that mitigate the individual's impairment must be taken into account." *Brown v. Univ. of Cincinnati*, 2005 WL 1324885 at *8 (S.D.Ohio 2005). An individual is considered "disabled" under the ADA if the individual (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. *Id*. at *9.

A handicapped or disabled person is "otherwise qualified" to participate in a program if the person can meet the program's necessary requirements with "reasonable accommodation." *Kaltenberger*, 162 F.3d at 435-36. Although a school may have a duty to make reasonable accommodations, the school "need not be required to make fundamental or substantial modifications to accommodate the handicapped." *Id*. at 436. Specifically, the duty to provide reasonable accommodations does not require an educational institution "to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Id*. (quoting *Southeastern Comm. College v. Davis*, 442 U.S. 397, 413 (1979)). A modification "is not reasonable if it either imposes undue financial and administrative burdens . . . or requires a fundamental alteration in the nature of the program." *Halpern*, 669 F.3d at 464. The Sixth Circuit has further held that a college "was not obligated to provide accommodation until plaintiff has provided a proper diagnosis of the alleged disability and requested specific accommodation." *Kaltenberger*, 162 F.3d at 437; see also *Brown*, 2005 WL 1324885 at *10 (publicly-funded university not obligated to provide accommodation to a student under the ADA or the Rehabilitation Act until the student has provided a proper diagnosis of his disability

13

and has specifically requested an accommodation); *Wynn v. Tufts Univ. Sch. Of Medicine*, 976 F.2d 791, 795 (1st Cir. 1992) (relevant inquiry is whether student ever put medical school on notice of his handicap by making "sufficiently direct and specific request for special accommodations").

Although determination of the reasonableness of a proposed modification is often fact-specific, a court may grant summary judgment in favor of a defendant if the plaintiff fails to present evidence from which a jury may infer that the accommodation is "reasonable on its face . . . or if the defendant establishes as a matter of law that the proposed modification will cause undue hardship in the particular circumstances." *Halpern*, 669 F.3d at 464. District courts are instructed to "show great respect for the faculty's professional judgment" when reviewing the substance of academic decisions. *Kaltenberger*, 162 F.3d at 436. In this regard, the Sixth Circuit has stated:

> University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation. Courts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement.

*Id*. (internal citations omitted). This admonition is "especially true relative to academic decisions which are made in the health care field [where] the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession." *Id*. at 437. The parties do not dispute plaintiff is handicapped or disabled as defined in the statutes, but LMU argues that plaintiff is unable to demonstrate that he is "otherwise qualified" to continue in its medical program. Plaintiff responds that LMU failed to

provide him with reasonable accommodations which would have allowed him to succeed in the program.

## A. Plaintiff is Not "Otherwise Qualified"

To establish that he is "otherwise qualified," plaintiff must demonstrate that he can meet the necessary requirements of the program "with reasonable accommodation." *See Kaltenberger*, 162 F.3d at 435. LMU states that plaintiff and Dr. Leo agreed to accommodations for plaintiff that included time and a half and a quiet room for examinations before plaintiff enrolled in Fall 2009. Plaintiff operated under these agreed upon accommodations during the Fall 2009 semester before his leave of absence and after his return for the Fall 2010 semester. LMU further states that at no time before he failed his second major pre-clinical course during the Spring 2011 semester, did plaintiff request any accommodations different than or in addition to the accommodations to which he agreed before starting at LMU in Fall 2009. LMU argues that plaintiff's poor academic performance throughout his time at LMU demonstrates that he is not "otherwise qualified" to satisfy the school's academic demands even with the agreed upon accommodations, and the decision to dismiss plaintiff was reasonable given his poor academic performance.

Plaintiff responds that LMU failed to follow its own process for determining what reasonable accommodations would be provided to him. Plaintiff provided LMU with documentation related to his disability and recommendations for accommodations. Plaintiff asserts Dr. Leo did not meet with or call him to discuss the accommodations request. Instead, Dr. Leo sent plaintiff an email telling him that he would get time and a

15

half for tests and a quiet room. No Student Disabilities form was completed listing the accommodations as required by the LMU Handbook. Dr. Leo testified in his deposition:

> Q.    And am I correct that for [plaintiff], that you did not develop a written accommodation plan?
>
> A.    We have a fairly standard accommodation plan. The students get time and a half, plus a quiet room.
>
> Q.    So those are the only accommodations that you provide?
>
> A.    Yes, that's all we've done.
>
> Q.    Okay. And is that written down?
>
> A.    It's not written down per se, no.
>
> . . .
>
> Q.    So there wasn't really any consideration of any additional time for [plaintiff]?
>
> A.    I mean, I talked with him and said its time and a half, and he agreed that that was – that seemed fine with him.
>
> Q.    Well now, did you talk to him or did you email him?
>
> A.    Well, I emailed him.
>
> [Leo Dep. 17-18]

First, the court notes that plaintiff agreed to the accommodations offered by LMU. Plaintiff acknowledged that he "received 50% more time throughout undergrad and that worked fine." Based on plaintiff's response, it was reasonable for LMU to conclude that any additional accommodations were unnecessary, particularly given the fact that plaintiff did not request any additional accommodations until after he failed two courses. Plaintiff's poor academic performance during his time at LMU demonstrates that he is

16

not "otherwise qualified" to satisfy LMU's academic demands even with the agreed upon accommodations. Before withdrawing from LMU for personal reasons during the Fall 2009 semester, plaintiff had a failing grade in Medical Gross Anatomy which he stopped taking, and failed to take the final examination in MFM-I. During the Fall 2010 semester, after plaintiff returned to LMU from the leave of absence, he passed all of the same classes he took the preceding year, but only after a grade of 69.58% in Medical Gross Anatomy was rounded up to 70%. In the spring 2011 semester, plaintiff failed two major pre-clinical courses, MFM-II and BNS. Finally, at the time the Student Progress Committee made the recommendation to dismiss plaintiff from LMU on April 29, 2011, he had a failing average in two other pre-clinical courses, Essentials of Patient Care II and Osteopathic Principals and Practice II.

Despite receiving the agreed upon accommodations of 50% additional time and a quiet room for testing, having access to all lecture notes and power points on the electronic Blackboard, and having videotapes of all lectures available to him, plaintiff was unable to perform well enough to pass his courses. As a result, plaintiff is unable to establish that he was "otherwise qualified" to continue in the school with reasonable accommodations. Therefore, the court finds that the decision by LMU to dismiss plaintiff was reasonable given his poor academic performance. *See Klene v. Trustees of Indiana Univ.*, 2010 WL 2985176 (S.D.Ind. 2010) (finding plaintiff was not a "qualified individual with a disability" because she could not complete the minimum requirements of the program despite the reasonable accommodations provided to her).

**B.  Plaintiff's Request for Extended Curriculum was Not Timely**

Plaintiff argues he made a request for an extended curriculum to the Student Progress Committee, and to Dean Stower and Dr. Leo, before the Dean made a decision to accept the Committee's recommendation of dismissal.   And, he provided documentation to the Appeal Board before it made the final decision that he would be dismissed.  Therefore, plaintiff asserts LMU had options other than dismissal that it could have employed to allow him to remain in the program.

LMU argues the request was untimely because it was made after plaintiff failed two pre-clinical science classes.  In addition, plaintiff did not submit documentation from a healthcare professional recommending a five-year decelerated program until after Dean Stowers accepted the recommendation of the Committee to dismiss plaintiff on May 2, 2011.  The Student Handbook required plaintiff to provide a professional opinion that he needed specific accommodation before it could be considered. *See Kaltenberger*, 162 F.3d at 436 (plaintiff had already failed two courses in first year of program before requesting any specific accommodation); *Wynn*, 976 F.2d at 795-96 (plaintiff's request to take oral examination was not reasonable because it was not made prior to failing exam); *Manickavasgar v. Virginia Commonwealth Univ. Sch. Of Medicine*, 667 F.Supp.2d 635, 646-67 (E.D.Va. 2009) (accommodation requests were unreasonable because they were untimely).

LMU further argues plaintiff's request for a decelerated program was unreasonable because it would require "a fundamental alteration in the nature of the

program." When asked about a decelerated program at LMU, Dr. Leo explained why

such a plan was unworkable:

> Those plans [five year curriculum] are developed with committees and
> faculty involvement, administrator involvement. Financial aid has to be
> involved. The Board of Trustees has to approve it. Our accreditors have to
> be notified 120 days before implement a plan like that. We would put it on
> the website, we would talk about it. We would advertise it. We would
> have an admissions policy for it; who gets into it. That's very different
> than a student who has failed out of medical school, saying "You need to
> give me a customized plan to continue on after I've failed out." Most five
> year plans would not allow a student who has failed out of medical school
> to get into the program.

[Leo Dep. 31-32].

"A modification is not reasonable if it either imposes undue financial and

administrative burdens . . . or requires a fundamental alteration in the nature of the

program." *Halpern*, 669 F.3d at 464. Plaintiff does not dispute the fact that the five-year

decelerated program he requested failed to require him to complete customary pre-

clinical prerequisites prior to participating in clinical coursework. Nor does he challenge

the fact that his proposal for a five-year program would have prevented him from

participating in the group examination portion of each class because other students would

be on a different examination schedule.

Plaintiff also did not address LMU's argument that his accommodation request

was unworkable and may have resulted in staffing, financial, and administrative issues.

Less burdensome accommodations than the decelerated program requested by plaintiff

have been rejected by other courts as being unreasonable. *See Kaltenberger*, 162 F.3d at

432 (defendant's decision to deny plaintiff's request to retake an examination she failed

was not unreasonable); *Halpern*, 669 F.3d at 465 (medical student's request for special remediation plan, which included ongoing psychiatric treatment and participation in a program for distressed physicians was not reasonable); *Wynn*, 976 F.2d at 796 (medical school's failure to offer alternative form of multiple-choice exam did not constitute failure to make reasonable accommodation); *Carlson v. Carroll Univ.*, 2011 WL 5921445 at *13 (E.D.Wis. 2011) (university's decision to deny request for a tutor and "do-over" on an examination was not unreasonable).

Plaintiff's own expert witness testified that LMU was under no obligation to consider his request for a five-year decelerated program because it was made after he failed the two classes that resulted in his dismissal from LMU. Brenda Premo testified as follows:

> Q. The Wynn case recognizes the fact that an accommodation request after the student fails an exam is too late; isn't that correct?
>
> A. Yes. And I agree with that. I have no problem with that. Can be too late, the school can make an option to do something, but as far as the law is concerned, you don't have to.
>
> Q. Law indicates that it's too late unless the university wants to –
>
> A. That's right, yeah.

[Premo Dep. 98-99]. Premo further testified that a university had no obligation to grant a retroactive accommodation request. *Id.* at 95-96 ("We explain to the student clearly, that anything that happened before the committee – say he failed two classes, the committee has the right to fail them"). The majority of federal courts agree that an after-the-fact

accommodation request is not timely. *See Kaltenberger*, 162 F.3d at 437; *Wynn*, 976 F.2d at 795-96; *Manickavasagar*, 667 F.Supp.2d at 643.

Moreover, courts must give deference to professional academic judgments when evaluating a reasonable accommodation request. *Kaltenberger*, 162 F.3d at 436. LMU has submitted evidence that plaintiff's request for a decelerated program was unreasonable because it was unworkable. Dr. Leo testified the proposal was problematic because it would have resulted in staff issues; additional and effort would be required to go through the accreditation; it would create financial aid issues; and it would have plaintiff taking clinical courses before he had completed the prerequisite science classes. The record shows that plaintiff did not make his request for a decelerated five-year program until after he had failed two courses and the Committee had recommended his dismissal from the program. It cannot be deemed reasonable for plaintiff to have waited until after he failed the courses and a recommendation of dismissal had been made to Dean Stowers to request new accommodations, particularly when LMU previously provided plaintiff with numerous opportunities to successfully complete his studies. In view of plaintiff's failure to timely request additional accommodations, LMU was not obligated under the statutes to provide him with any additional opportunities to successfully complete medical school at LMU. Accordingly, there is no basis to interfere with LMU's decision to dismiss plaintiff from the program.

**C.** **Plaintiff was Not Dismissed by LMU due to his Impaired Reading Ability**

LMU argues that plaintiff was not dismissed from the school on the basis of his handicap or disability; instead, plaintiff was dismissed for a legitimate and nondiscriminatory reason – he failed to make adequate academic progress during his time at LMU.

Plaintiff acknowledges that he failed two academic courses in his second semester at LMU. However, in his repeat of first semester courses in Fall 2010, he passed all courses that he had taken in Fall 2009. Plaintiff states the repetition and additional time to absorb the material helped him to succeed. Plaintiff argues that because LMU did not provide computer-based software to assist him with reading written material, LMU cannot say whether he would have failed the two courses that form the basis for his dismissal. In addition, LMU failed to consider his request for an extended curriculum to spread out the number of courses he was required to take each semester. Such an accommodation, plaintiff states, would have reduced the amount of reading required each semester, and he would have been able to pass his courses.

Plaintiff has not advanced significantly probative evidence sufficient for a jury to conclude that LMU's reasons for dismissing him were pretextual or asserted in bad faith. First, the record shows that he was admitted to LMU after officials learned about his reading difficulties. Second, LMU agreed to accommodations before plaintiff began classes. Third, LMU assigned plaintiff a tutor in the Fall 2009 semester. Fourth, Dean Stowers approved plaintiff's request for a leave of absence during the Fall 2009 semester.

Fifth, LMU agreed to allow plaintiff to return to school for the Fall 2010 semester and resume his studies.

Plaintiff has not shown any discriminatory animus by LMU. Instead, LMU provided plaintiff with accommodations that he believed were necessary and sufficient for him to succeed in the program. Plaintiff did not request any additional or different accommodations until after he failed his second pre-clinical science course during the Spring 2011 semester. The "onus is on the student . . . to request such accommodations from the school." *Axelrod v. Phillips Academy*, 46 F.Supp.2d 72, 84 (D.Mass. 1999). The record is void of any facts that suggest plaintiff's dismissal was for any improper purpose or in violation of either the Rehabilitation Act or the ADA. Rather, the record shows that plaintiff was dismissed from LMU for poor academic performance. When pretext is at issue in a discrimination case, "it is a plaintiff's duty to produce specific facts which reasonably viewed, tend logically to undercut the defendant's position." *Wynn*, 976 F.2d at 796. Plaintiff has failed to carry his burden of showing that his dismissal from LMU was on the basis of his disability.

**D.      LMU's Decision to Dismiss Plaintiff is Entitled to "Great Respect."**

District courts are instructed, when reviewing the substance of academic decisions, to "show great respect" for the faculty's professional judgment, and "only reluctantly intervene in academic decisions." *Kaltenberger*, 162 F.3d at 437. It is equally clear that "university faculties must have the widest range of discretion in making judgments as to the academic performance of students." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 215, 225 (1985). This admonition is "especially" true in "the health care field where the

23

conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession, a profession whose practitioners are entrusted with life and death decisions." *Manickavasagar,* 667 F.Supp.2d at 643. In light of the foregoing authority, the court will defer to LMU's considered academic judgment, especially since the school offered a variety of accommodations to help plaintiff succeed. Despite these accommodations, plaintiff was unable to pass the number of courses required to remain in the program. As a result, he was dismissed from the program. The court sees no reason to second-guess LMU's decision.

## IV.  Conclusion

In light of the foregoing discussion, the court finds LMU's motion for summary judgment [R. 9] well-taken; the motion is **GRANTED;** and this action is **DISMISSED with prejudice.**

_____
**UNITED STATES DISTRICT JUDGE**

24